### N. Mills Lewis et al., Appellants, v. Jed Lewis et al., Appellees.

### Gen. No. 5,138.

1. WILLS—*when deduction of distributee's share properly made.* If a will directs that the amount of a particular note mentioned therein shall be deducted from the share of one of the distributees named in the will, such deduction is properly made regardless of whether such note or a part thereof has at the time of the making of the will been paid. Such being the intention of the testator as shown by the terms of the will.

2. APPEALS AND ERRORS—*what not part of chancery record.* The original report of a master in chancery with the original documents attached therto should not be incorporated in the transcript made up for appeal, nor can such report be properly imported into the record by the employment of the vehicle of a certificate of evidence.

Partition. Appeal from the Circuit Court of Warren county; the Hon. JOHN A. GRAY, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed October 19, 1909.

BROWN & SOULE, for appellants.

HANLEY & COX (H. B. SAFFORD, Guardian *ad litem*), for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The main purpose of this suit was to partition between the devisees the real estate left by H. M. Lewis at his death, but the only controversy upon this appeal relates to a promissory note for the principal

sum of $3,300 signed by Norvel Lewis and Mattie V. Lewis, his wife, payable to the order of H. M. Lewis, and remaining among his papers at his death. The will appointed two of the sons of the testator executors, directed the payment of his debts, and bequeathed $1,000 to his daughter, Effie Besler. The rest of the will was as follows:

"3d. After the payment of my just debts, funeral expenses, and the bequest of One Thousand Dollars to Effie Besler, I order and direct that all the balance of my property, real and personal, be divided into seven equal parts as near as may be practicable and distributed among my children, share and share alike, except that from the share of Norvel Lewis now deceased two promissory notes, one for the sum of Thirty-three Hundred Dollars ($3300.00) dated Jan. 1st, 1891, with interest at six per cent per annum, and one for Twelve Hundred Dollars ($1200.00) dated May 1st, 1894, with interest at six per cent per annum, are to be deducted, that is to say: 1st, To the heirs of my son Norvel Lewis, now deceased, one seventh part except that the two promissory notes before mentioned, viz: one for $3300 and interest and one for $1200 and interest are to be deducted from said share. 2nd. To my daughter Mary Miller one seventh part. 3rd. To my son Jed Lewis one seventh part. 4th. To my son Emory Lewis one seventh part. 5th. To my daughter Sarah Richmond one seventh part. 6th. To my daughter Effie Besler one seventh part. 7th. To my son Ed C. Lewis one seventh part.

I direct that Henry Staat, W. H. Brooks and C. E. Nisely, be appointed Commissioners to appraise my property, real and personal, and divide the same into equal shares as near as may be practicable and set off the same to my heirs as before stated."

The heirs of Norvel Lewis, all minors, filed a bill and afterwards an amended bill. Sarah Richmond had died before the testator. Her children, all minors, and the other devisees of the testator were made defendants. Both bills charged that Norvel Lewis paid said $3,300 note in full to H. M. Lewis, and that the latter, not having said note in his possession at the time

and place of payment, agreed to deliver it to Norvel, but neglected to do so, and that the executors have it in their possession; but that by reason of its payment by Norvel Lewis to the testator it should not be deducted from the share of the complainants, the heirs of Norvel Lewis. The bill prayed, besides other relief not material on this appeal, that said note for $3,300 and the interest thereon, be not charged against complainants nor deducted from their share of the property left by the testator, nor from the proceeds thereof, but that it be delivered to complainants to be cancelled; and that the rights and interests of all the parties in the premises or in the proceeds thereof be ascertained and declared by the court. The adult defendants answered denying that Norvel Lewis paid said note to H. M. Lewis and that the latter agreed to deliver said note to Norvel Lewis; and the answer further averred that even if said note had been paid yet the testator by his will directed that it should be deducted from the said one-seventh of his estate, and that the terms of the will cannot be changed or altered. The executors answered as to the necessity that they should receive a part of the proceeds of the real estate to enable them to pay debts and the legacy. The minor defendants, heirs of Sarah Richmond, filed a formal answer by a guardian *ad litem,* and also a cross bill, in which they set up their right to participate in the deduction to be made from the shares of the heirs of Norvel Lewis, deceased, for the principal and interest of said $3,300 note, and asked protection in that and certain other matters. The children of Norvel Lewis demurred to the cross-bill on the ground that the equities of the cross-complainants could be adjusted under the original bill. That demurrer was sustained and the cross-bill was dismissed. Thereafter the cause was referred to the master to take and report the proofs, with his conclusions of law and facts. The master took and reported the proofs and his conclusions; and as to said $3,300 note he reported that the principal and interest thereon should be de-

ducted from the one-seventh willed to complainants; that there was no right in fact or authority in law to omit to deduct said note from said share, or to reform, revise or change the will; that the note had not in fact been paid, and that it should not be cancelled and delivered up. Complainants filed twelve objections to said report, which were overruled by the master, and were renewed before the court as exceptions to the report. All but the 5th, 10th, 11th, and 12th of said exceptions relate to said $3,300 note. The court sustained the 3rd, 5th, 10th and 11th exceptions and overruled the others, and decreed, among other things, that the interests of the complainants in the estate are charged with the principal of said $3,300 note, with interest thereon at six per cent per annum from its date. The questions discussed here are whether the note was, in fact, paid; and, if so, whether that fact will relieve the heirs of Norvel Lewis from the deduction, or whether the note must in any event be deducted because the will so directed.

The third exception was that the master found that said $3,300 note had not been paid. That exception was sustained. No cross error has been assigned. At first blush it would seem that because no cross-error is assigned on that ruling, the question whether that note was paid is not presented, but that it is to be assumed that the court held that the note was paid, but must, nevertheless, be deducted in obedience to the will. But the court overruled the seventh exception, which attacked the report because the master failed to find that said note was fully paid by Norvel Lewis to H. M. Lewis, and that H. M. Lewis agreed to deliver said note to Norvel Lewis, not having it in his possession at the time and place of payment, but that he neglected to deliver it to Norvel Lewis as agreed. This is one of the rulings of the court upon the report which is assigned for error by complainants, and it raises the question whether said note was paid. Apparently the court held that the directions

of the will must be obeyed, and it was therefore immaterial whether the note was paid or not.

The first question, therefore, is whether the proof warrants the conclusion that the note was paid, for if it was not paid, then the contention of complainants that the note should have been decreed not to be deducted from their share is necessarily defeated. It is not contended that the note was paid after the will was made, but long before. The note is dated January 1, 1891, and was due one year after date, with interest at six per cent per annum from date. The deed by which it is alleged that payment was made was dated and acknowledged April 16, 1894, was delivered about April 30, 1894, and was recorded on the latter date. The will was drawn and executed on January 13, 1904. The testator died about March 5 or 8, 1905. The will was admitted to probate on April 4, 1905. The alleged payment was therefore between nine and ten years before the execution of the will. The payment was sought to be proved by F. B. Sheldon, whose name was signed to the original bill as solicitor for the complainants, and by Mattie V. Lewis, widow of Norvel Lewis and mother of complainants, and who brought the suit as their next friend in the original bill. Before F. B. Sheldon and Mattie V. Lewis testified, their names were withdrawn from the case.

Norvel Lewis, at the time of the alleged payment, lived near Beatrice, Nebraska, and owned two farms, one upon which he lived called the "Home Farm," and another called the "Wagner Farm." Sheldon was a lawyer at Beatrice. There were four mortgages upon the Wagner farm which H. M. Lewis had taken up and caused to be assigned to himself, and the assignments were of record. Norvel was heavily indebted to his father. On April 16, 1894, Sheldon prepared a warranty deed from Norvel Lewis and Mattie V. Lewis, his wife, to H. M. Lewis, conveying to him the Wagner farm for an express consideration of $5,000 and they executed and acknowledged it, and Norvel Lewis took this deed away with him. H. M.

Lewis lived in Warren county, Illinois.  Sheldon tes-
tified that in the latter part of April, 1894, H. M. Lewis
came to his office and said that he had just come from
Illinois and wanted to go out to Norvel's place, and
that Norvel wanted him to make a settlement and take
a deed to the Wagner farm for $5,000; that the wit-
ness told H. M. Lewis that he had drawn such a deed
for Norvel and believed that it would be a good thing
for Norvel to make some such settlement; that H. M.
Lewis said he did not bring any money with him, but
had his note for $3,300 at home and if he decided to
take the farm he could easily arrange for the price,
whatever it was worth; that on April 30, 1894, H. M.
Lewis came to his office and he went with H. M. Lewis
to the court house to introduce him to the register of
deeds and to identify him as the person named in the
assignments of the mortgages and entitled to release
the same; that H. M. Lewis on that day released said
mortgages and filed for record the deed from Norvel
and wife; that H. M. Lewis then told him that he and
Norvel had made a settlement; that he was to take the
land, meaning the Wagner farm, and to release the
existing mortgages and to give up to Norvel the $3,300
note and take a new note for $1,200 in settlement of
everything.  One of these mortgages was for $1,000
and one for $1,100 and the other two were "commis-
sion mortgages" for part of the interest on the prin-
cipal mortgages.  Sheldon testified that H. M. Lewis
told him that he figured the mortgages at about $2,500
and that this note was for $3,300 and that he was not
particular about figuring the interest exactly with Nor-
vel or any of his sons, and that allowing himself $400
interest would make the new $1,200 note a settlement
of their affairs.  It will be seen that the $2,500 of
mortgages, the $3,300 note and $400 for interest would
make $6,200 and if the Wagner farm was taken at
$5,000 a note for $1,200 would balance those matters;
and such is the substance of the conversation with H.
M. Lewis to which Sheldon testified.  He further tes-
tified that the next day H. M. Lewis and Norvel Lewis

came to the office together, and at Norvel's request he drew up a note for $1,200 which Norvel signed and gave to his father. He further testified that H. M. Lewis called him to witness that it was all settled, and that he would send the $3,300 note to Norvel, or Norvel could get it sometime when he was in Illinois. There are several matters appearing in the record which raise doubts as to the reliability of this testimony. Whatever the arrangement may have been between H. M. Lewis and Norvel Lewis at that time, it was not made in Sheldon's office. Sheldon took no part in the negotiations. He testified May 3, 1907, according to pages 182, 183 and 184 of the record, and not upon the date stated in the abstract. He therefore testified thirteen years after this casual conversation at his office. It is unusual that he should be able to remember and relate so many years later the minute details told to him in conversation by a person who was not his client and concerning a negotiation which he had not conducted. It seems more probable that he had studied documents and data given him by others and from these had formed a theory of what the consideration for the deed to the Wagner farm might have been, and that he was testifying from that theory rather than from a precise recollection. Upon his cross examination a number of letters written by him to H. M. Lewis within sixty days preceding this conversation were identified by him and introduced in evidence, and also two drafts, one dated March 12, 1894, for $460 and the other April 27, 1894, for $500 which H. M. Lewis sent to Sheldon to be used in paying off various liens upon his son's two farms. Besides these drafts, the letters showed the receipt by Sheldon of another remittance from H. M. Lewis of $60 a few days before H. M. Lewis made this visit to Beatrice, so that it is entirely clear that the items which Sheldon testified that H. M. Lewis stated to him in that conversation on April 30, 1894, could not cover the entire indebtedness from Norvel Lewis to his father. These letters also showed that many things

had taken place concerning the affairs between H. M. Lewis and Norvel Lewis and in which Sheldon had a part, which he had entirely forgotten till the letters, statements and drafts were produced. Another reason for doubting his testimony arises from an apparent suppression of evidence. Thereafter and before Norvel Lewis died, but perhaps after he returned to Illinois, to live, there was litigation in Nebraska with one Savage, involving the financial relations between H. M. Lewis and Norvel Lewis. In that case a deposition or depositions were taken. They were spoken of in Sheldon's cross examination sometimes as a deposition and sometimes as depositions. Sheldon withdrew them from the court in Nebraska and sent them to the complainants' solicitor in Illinois and testified that he did so because he thought they might have a bearing upon the present litigation. An effort was made by the court in Nebraska to compel their return, but they were not returned. Defendants assumed that they were the depositions of H. M. Lewis and Norvel Lewis, and served upon complainants' Illinois solicitor a notice to produce them at the hearing of this case, but he failed to do so. These depositions apparently must have related to the financial dealings between H. M. Lewis and his son, Norvel, and their suppression by complainants' solicitor and witness creates an unfavorable inference, or rather an inference that they would have shown a different state of affairs from that testified to by Sheldon.

Mattie V. Lewis, widow of Norvel Lewis and mother of complainants, who began this suit as their next friend, testified for them and testified that on the occasion of the visit of H. M. Lewis to them in Nebraska in the last week of April, 1894, Norvel and H. M. Lewis settled their affairs; that H. M. Lewis had bought up mortgages against a piece of land amounting to about $2,500 and that he held their note for $3,300 and that there was some interest upon these amounts, and that they gave him a deed for the Wagner farm and a note for $1,200 to settle the whole thing, and that H. M.

Lewis said he would send the $3,300 note back after he reached his home farm in Illinois. Defendants insist that Mrs. Lewis was not a competent witness against them, since they are defending as heirs and executors. She was testifying to transactions and conversations by her husband occurring during their marriage. She also was a joint maker of this note and was seeking by her testimony to enable her children to obtain such a decree as would relieve her from liability to the executors of H. M. Lewis on this note. It may be that the statute of limitations would have been a defense in her behalf if she had been sued thereon and had pleaded that statute, but by this evidence she was seeking to establish for herself a complete and perfect defense to the note, regardless of the statute of limitations. The foregoing was all the evidence to show that this particular note for $3,300 mentioned in the will had been paid almost ten years before the will was drawn. Against this evidence is the fact, first of all, that the testator made this will, in which he treated this note as still in full force for the full amount. The scrivener of the will called upon H. M. Lewis for the note, in order that he might correctly describe it in the will, and Lewis produced it. Again, the note was found among his papers after his death. He did not return it to his son after he came home from Nebraska. The next year after Norvel and his wife deeded the Wagner farm to H. M. Lewis, Norvel and his wife removed to Illinois and took up their residence in the home of H. N. Lewis and remained there till Norvel died in 1897, and some time thereafter Mattie V. Lewis returned with her children to Nebraska. If this note had been paid it would have been natural that Norvel Lewis or his wife should have asked for its surrender. When a promissory note is found in the possession of the payee uncancelled, there is a presumption that he is the owner and that it is unpaid.

We recognize the general rule that where a will directs that a certain sum shall be treated as having been advanced to a certain devisee or legatee, or di-

rects that a certain sum shall be charged against a devisee or legatee, or deducted from the share otherwise given by the will to such devisee, the amount fixed in the will cannot be questioned, but the deduction must be made. We are of opinion that under ordinary circumstances, if a will directs that the amount of a promissory note described, shall be deducted from the share of a beneficiary under the will, what is usually meant is that the amount actually due upon such note shall be deducted. A promissory note is but a piece of paper and has no intrinsic value. It is merely an evidence of indebtedness. When a will directs that a certain promissory note shall be deducted, it ordinarily means that the indebtedness evidenced by that note shall be deducted. If in this case the proof had shown that a year after this will was made, Norvel paid $500 on the note, no one, we think, would doubt that the amount of the reduction required by the will should be diminished by the amount of that payment. But this general view of the meaning of a direction in a will to deduct the amount of a promissory note does not seem to us to apply to this case in the manner urged by appellants. Their theory is that this note had been paid and that the testator, when he afterwards made his will, had forgotten that the note was paid. We find nothing in the record to justify us in presuming that he had forgotten the facts. There was nothing to show that he was not of sound mind and memory. He was a man of large wealth for a farmer. The real estate which he left is inventoried at nearly $40,000. From 1899 till about the time of his death he was a stockholder, director and vice-president of the Farmers' State Bank at Berwick, Illinois. If this note was in fact paid in the deed of Wagner farm to H. M. Lewis in April, 1894, then we must assume that the testator knew that fact and yet directed that this note should be deducted from the share of Norvel's heirs. Hence the ordinary presumption that he meant only the indebtedness evidenced thereby cannot be applied. If we assume that

it was paid, then, knowing it to be paid, he still direct-
ed the note, principal and interest to be deducted. Why
he did this probably cannot be known and is immate-
rial. It may be that he and his son had some later
dealings whereby it was arranged that he should not
surrender the note but should retain it. H. M. Lewis
afterwards sold this land. It is conceivable that the
proceeds of that sale were turned over to Norvel Lewis
by some arrangement which involved the retention of
the $3,300 note by H. M. Lewis. It may be that its
retention grew out of the support by H. M. Lewis of
Norvel Lewis and his large family in the home of
H. M. Lewis during the last two years of Norvel's
life. It may be that because H. M. Lewis cared for
Norvel and his family at his home during the last two
years of Norvel's life, the testator afterwards, when
he made his will, concluded that equality in the divi-
sion of his property among his children required
that the amount of principal and interest upon this
note should be deducted from the otherwise equal
share which he was devising to the heirs of Norvel.
For some reason known to H. M. Lewis when he made
his will, the testator determined that the amount of
this note should be deducted, and if in fact it had
previously been paid in full, then he meant that it
should be deducted notwithstanding said payment.
It follows that in our judgment the court below prop-
erly caused the note to be deducted, regardless of
whether the evidence is considered as establishing its
payment or otherwise.

The original report of the master in chancery with
all the original documents attached thereto has been
incorporated in this record. The law does not author-
ize such documents to be embraced in the record upon
appeal. Beth Hammidrash, etc., Congregation v.
Oakwoods Cemetery Association, 200 Ill. 480; Mar-
tin v. Todd, 211 Ill. 105. It was sought to obviate
this by causing the trial judge to sign a certificate
of evidence embracing said master's report. The
cause was heard by the court solely upon the ex-

ceptions to the master's report. The trial judge heard no evidence except that reported by the master. No certificate of evidence was necessary or proper, and the master's report and the accompanying documents are no proper part of the record, under the authority of the foregoing cases, and the findings recited in the decree supported the decree, and for that reason also it must be affirmed. But notwithstanding this, we have determined the case upon the merits. We find no error in the action of the court concerning the $3,300 note, and that is the only matter in which the decree has been questioned here. The clerk is directed to detach the master's report and accompanying exhibits and to return them to the clerk of the Circuit Court of Warren county.

The decree of the court below is affirmed.

*Affirmed.*